case this morning your honor is number 1 4-1 9 2 6 Barbosa versus Mitchell Ms. Dougherty. Good morning, may it please the court. Elizabeth Dougherty, I represent the petitioner defendant appellate in this case Hilda Barbosa. This case is a denial of a petition for habeas corpus relief by the district court and we are appealing that matter. In this case the defendant you need some water. No I'm fine. In this case after the defendant was arrested in connection with the murder of Edward Surratt, Cheryl Delatory, a DNA analyst in the crime lab conducted DNA testing on items that were seized from the defendant. However, Ms. Delatory did not testify at his trial instead her supervisor at the crime lab, Julie Lynch, testified and read from her results table and that results table was admitted into evidence at trial. It is our contention that that admission of that evidence and her testimony and her opinion violated the 6th amendment of the United States Constitution. This case turns on what the clearly articulated law of the Supreme Court was at the time the SJC decided its state court decisions. And as I understood your argument, you say that the federal court is obligated to take the latest Supreme Court decision and project from that what the likely outcome is going to be on the next decision that comes along. Not exactly. It's clear that at the time of the SJC decision the clearly established principles were set forth in Melendez-Diaz versus Massachusetts. In my brief I contend and I would submit that it's not necessarily determinative to my success on this appeal, but I contend that those clearly established principles in Melendez-Diaz were that if you read the decision of Melendez-Diaz, it's clear that Ms. Delatory should have been the witness at this trial. She was the analyst. She was the one who produced those results. That's true, but what Melendez-Diaz did not deal with was the question of what was the extent of Rule 702 and whether one expert could use a table of results prepared by another expert and rely on those as the basis for testimony. Melendez-Diaz didn't deal directly with that question and indeed if Melendez-Diaz had clearly established that point, there would have been no need for the Supreme Court to grant cert in Volkoming. With respect, Judge Celia, I would say that in fact Melendez-Diaz did address that in Crawford from which Melendez-Diaz built upon. There's language that says that the confrontation clause trumps the rules of evidence. And so that in this case and in subsequent cases, the confrontation clause analysis should have trumped and should have been made before the evidentiary. I would point out that... prior to the SJC's decision in this case, had a case applying the confrontation clause to the documents historically relied on by experts when experts testified. We now know what the result of that inquiry is because we've got the Volkoming decision, but that wasn't... But I would suggest if you look at Volkoming, the language in Judge Ginsberg's decision, and I've pulled out a number of these, this language in my brief, it says this is a clear-cut case, this is not a big deal, this is, you know, we are just applying... So the Supreme Court took the question and decided it in Volkoming, but it would not, as Judge Celia just said, if it was just so routine, the Supreme Court would not have granted cert. It was deciding an important issue of law. And you're saying that the habeas statute enables a federal court to declare as the clearly established law that the Supreme Court itself had not yet decided. We would be reversed for that. I guess I am... I appreciate your point. I guess I am saying that this court needed to look at what the clear... To predict what the... To predict... No, I... Can you say that the state court was unreasonable because it didn't predict it in a certain way? No, I think that what I'm arguing is that the state court was unreasonable because they did not apply the language that was already there in Melendez-Diaz to this situation. That they were unreasonable in that they applied the rules of evidence to this situation stating unreasonably that it provided them more protection than the United States Constitution. I'm suggesting that on the basis of the decision in Melendez-Diaz, it was clear that Ms. Dellatori, rather than her supervisor, should have been the... They should have applied the language, but our concern is the holding of the Supreme Court, which didn't reach that question. I would... With respect, I would submit that it did when it said that... When it found that forensic analysts were witnesses against the defendant and that a defendant was entitled to cross-examine the witness against them. The Melendez-Diaz... The whole point that's different, of course, of what the SJC said is that the defendant did cross-examine the witness against him. Cross-examined the woman who testified. The question that hadn't been answered in Melendez-Diaz was whether that witness could rely on the DNA results that had been prepared by Dellatori. That was not addressed in Melendez-Diaz. And you can make a very good argument, and in hindsight, a correct argument, that extrapolating from the principles of Crawford and Melendez-Diaz, you could guess, or maybe even probably guess, as to how that inquiry would come out. But that's a far cry from saying the law was clearly established at that point in time. However, at trial, the defendant did not... He was able to cross-examine a witness. It was not the forensic analyst. They were not able to cross-examine the forensic analyst. And when you look at the impetus and some of the rationale behind Melendez-Diaz, much of it was the confrontation of the actual analyst to try to weed out fraud, poor training, all those kind of things. None of those things could be gotten through Ms. Lynch. Well, she was familiar with the laboratory procedures and everything, and this wasn't just one analyst coming in for another. It wasn't just like a surgeon testifying based on a radiologist report or an x-ray. She had no idea what, and she testified as such, she had no idea what Ms. Dellatori did during her testing. What she reviewed was the results table, which is included in the brief, and she signed off on that. The written report, which is in the testimony, in the trial testimony, consisted of the type of testing and her results. She had no idea what, and that's not what Melendez-Diaz was trying to get at. What I was going to say before is sort of the specter that looms all of this is, of course, Annie Dukin and all of the chickens that came home to roost from that. Of course, thank you. Thank you. Mr. Hurled? Thank you, Your Honors, and may it please the Court. Christopher Hurled, Assistant Attorney General, representing the respondent, Lisa Mitchell, in this case. The holding in Melendez-Diaz is narrow. The question that was presented was whether affidavits that were offered showing that substance that was tested was actually cocaine were testimonial, which rendered the affiant's witnesses subject to the defendant's right of cross-examination under the Sixth Amendment. The holding of the case, Melendez-Diaz, is that the Sixth Amendment does not permit the prosecution to prove its case via ex parte out-of-court affidavits, and admitting that evidence was error here. In this case, the question is entirely different. The question is whether a testifying expert can base her opinion, to some degree, on technical tests that were performed by somebody else. This Court in Nardi held that before Bullcoming, the question hadn't been answered. The District of Massachusetts in Delacruz and in Hensley held that this question hadn't been answered. The petitioner, in his petition for cert to the Supreme Court, admitted that the question that was answered by Melendez-Diaz was different than the question that's presented in this case, and also admitted that the question that was answered by Bullcoming was different than the question that they're now presenting in this case. The supplemental answer is page SA-299, which is the petition for cert that was filed. The petitioner admits that the question that is now before this Court was not clearly answered by existing Supreme Court precedent at the time that the conviction was affirmed by the SJC. And under habeas review under AEDPA, habeas can only be granted if the decision of the State Court was either contrary to or represented an unreasonable application of clearly established law at the time of the conviction. So therefore, what does the defendant's contrary statements, the petitioner's contrary statements in his petition for cert have to do with any of this? Isn't that an issue of law for this Court to determine whether there was an unreasonable application of clearly established law? That is a matter of law for this Court to determine. I didn't quite understand the beginning of the question. Well, you were basically saying he admitted at the time that he filed for cert that the clearly established law didn't cover this case. And I suppose that's useful, but it's still a legal determination for us to make. That's correct, Your Honor. I wouldn't present that to argue that the petition for cert were some waiver. What I would say is that it represents basically the fact that reasonable people could have disagreed about what the next case was going to be decided. We're very careful about what appear to be concessions made by one side or another in a criminal case. And we frequently, although the government may concede something, we don't take it. Thank you, Your Honor. And I would say, Your Honor, the cases that have come even since Melendez-Diaz and since the conviction was upheld, both Bullcoming and Williams v. Illinois, what you see there is basically that the SJC, I don't necessarily think that this would have been an easy case to predict for what would have happened next in Bullcoming. I don't think the Supreme Court necessarily, without looking at the facts on the grounds themselves, would necessarily know how they were going to rule in the next case. So despite the fact that neither Bullcoming nor Williams v. Illinois can show the clearly established law that the SJC had to apply, they are indicative of the fact that there is a lot of fair-minded disagreement about what comes next. So I'd like to move on, if there are no more questions regarding clearly established law, to the issue of substantial and injurious effect. Yes. Do we have to get to that issue unless we find against you on the first issue? Do you have to get to the issue of substantial and injurious effect? I would say to the extent that there was no clearly established law necessarily requiring the SJC to hold that two narrow portions of the testimony were not prohibited, you could rule on that basis alone. But the SJC did rule in favor of the petitioner when it came to the admission of two things. When it came to Ms. Lynch's testimony that Ms. Dellatore had agreed with Ms. Lynch's independent opinion and with the admission of the DNA table itself. So to the extent that the court is able to hold that the law wasn't even clearly established when it comes to that as a matter of federal law, the SJC decision isn't necessarily clear as to whether it's applying federal law there or the Massachusetts Declaration of Rights because at that point the prosecution had conceded that neither of those two things should have been admitted. On what issue or issues was the COA granted in this case? I believe that the COA was granted as to basically all the issues that are raised within the briefs, but I couldn't state that with 100% certainty. I apologize. So when it comes to substantial and injurious effect, under the Brecht Standard, even if there is constitutional error, the petitioner has to show, and the petitioner is only entitled to habeas relief if he can show, that the error had a substantial and injurious effect by actually prejudicing the jury's verdict. This is different than the Harmless Beyond a Reasonable Doubt Standard because we're on habeas review. And this is a burden that belongs to the petitioner. It's held in 2015, Davis v. Ayala. That's 135, Supreme Court, 2187, which noted that a prisoner seeking federal habeas relief must satisfy Brecht and must show that he was actually prejudiced. And in this court's decision in 2014 of Connolly v. Rodin, 752 F. 3rd, 505, stating that if it hadn't been explicitly held by the Supreme Court in Frye that the burden of establishing substantial and injurious effect was the petitioner's, it at least – Are those two cases in your brief? Neither of those two cases are, which is – You better send us a 28-day letter. I will, Your Honor. I will. And basically here, Your Honors, there was no substantial and injurious effect, and the petitioner can't satisfy his burden to show it because the evidence in this case is found by the SJC and found by the district court was overwhelming. Mr. Carbuccia, the surviving victim of the shooting – Is overwhelming the test you want us to apply? No, it's not. It's above and beyond what would – we don't have a burden here. The petitioner does. And we don't have to show that the evidence was overwhelming. That's not the test that we're asking you to apply. But nonetheless, that's what was found by both the SJC and the district court. There's an eyewitness to the shooting, one of the victims. There's some dispute as to what that victim actually testified to. The only thing that he said he didn't see during the shooting, and the transcripts aren't before this court, was that he didn't see the gun itself. He said that he did identify the petitioner as the person who shot him. He didn't see the gun. He saw the petitioner reach with his right hand for something and then saw a lick of flame, and then he was shot. Mr. Sanchez, an eyewitness in this case who lived down the street, testified that he saw a fight going – he heard some gunshots, saw two men come into view, saw a fight going on, saw the assailant continue to punch the victim that was on the ground, and after the men had come into view, he had heard another shot. The police came across the petitioner near the scene of the crime shortly thereafter. They testified that he was walking quickly, he was glistening with sweat. When he was approached by the officers and asked about the gunshots, the petitioner said, they're over there, they're crazy, I heard shots, I have to run. When the police got out of the car and identified themselves, the petitioner ran. The police chased him. When the petitioner fell, one of the police officers was able to tackle him. As they struggled, the police officer ordered the petitioner to show his hands. He didn't do so. During the struggle, he crawled over to a catch basin in the street. The officer heard a loud splash, saw the petitioner withdraw his hand from the catch basin, at which point he showed his hands and stopped struggling. City and state workers were brought to the scene. They used a truck to sweep the debris from within the catch basin. A gun was recovered, and there was testimony that the gun matched the gun that was used in the shooting. That may be enough, counsel. It's not a closing argument. Thank you very much, Your Honor. Thank you. Would you like to add anything to your argument? Okay. Thank you both. Pardon? Yes.